UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LEANDRO FARES MARTINEZ ANGULO, | ) ) ) ) | |
| Petitioner, | ) ) ) | |
| | ) ) | Civil Action No. 26-CV-10302-AK |
| v. | ) ) | |
| ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility; DAVID WESLING, Acting Field Office Director, U.S. Immigration and Customs Enforcement; TODD LYONS, Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, U.S. Secretary of Homeland Security | ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) | |

MEMORANDUM AND ORDER ON
PETITIONER'S WRIT OF HABEAS CORPUS

**ANGEL KELLEY, D.J.**

Petitioner Leandro Fares Martinez Angulo filed a Petition for Writ of Habeas Corpus [Dkt. 1] under 8 U.S.C. § 2241 against several officials of the United States ("Respondents"). Petitioner alleges that his ongoing detention at the Plymouth County Correctional Facility violates the Due Process Clause.  For the following reasons, Petitioner's Petition for Writ of Habeas Corpus [Dkt. 1] is **GRANTED**.

I.      BACKGROUND

Petitioner is a citizen of Ecuador, with no criminal record, who has been in immigration detention since December 23, 2025.  In the summer of 2023, Petitioner's uncle was murdered and he witnessed the murder of another man.  The perpetrators then searched for Petitioner in his

1

village and threatened him.  As a result, on or around September 25, 2023, after fleeing Ecuador, Petitioner presented himself at the U.S. Port of Entry in El Paso, Texas and requested asylum. He was detained.  In November 2023, an asylum officer found that Petitioner did not have a credible fear but that determination was subsequently overturned by an immigration judge, who found that Petitioner had demonstrated a credible fear and had established a significant possibility of eligibility for asylum.  On January 18, 2024, Petitioner was released from DHS custody on parole pursuant to 8 U.S.C. § 1182(d)(5)(A).  Following his release, Petitioner moved to Maine and in line with his conditions of release, regularly reported to Immigration and Customs Enforcement ("ICE").  Petitioner's parole expired one year after it was granted, but even after its expiration, Petitioner continued to check in with ICE.  Since his 2024 release, Petitioner has filed an application for asylum based on his credible fear determination.

Petitioner was arrested by ICE on or about December 23, 2025.  Petitioner was not provided notice of or explanation for his arrest.  Instead, "[a]t the time of his detention, ICE did not give him any explanation for changing his custody status, other than their goal of placing him in removal proceedings." [Dkt. 1 at 2].  Petitioner was subsequently brought to Plymouth County Correctional Facility and has been detained there since.  While in detention, ICE has not alleged any change of circumstances related to risk of flight or danger to the community.  ICE has not set bond for Petitioner and he has been unable to obtain review of his custody by an Immigration Judge.

Petitioner filed the instant Habeas Petition on January 23, 2026. [Dkt. 1].

## II.    LEGAL STANDARD

Section 2241 confers jurisdiction on this Court to order the release of any person who is held in the custody of the United States in violation of the "laws . . . of the United States" or the

United States Constitution. 28 U.S.C. § 2241(c).  The burden rests on the person in custody to prove his detention is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) (citing Walker v. Johnston, 312 U.S. 275, 286 (1941)).

### III.    DISCUSSION

"[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  Respondents argue that Petitioner only has those rights conferred to him by statute because he is an applicant for admission. [Dkt. 8 at 3-4 (citing Dep't of Homeland Security v. Thuraissigiam, 591 U.S. 103 (2020))].  Contrary to Respondents' contentions, Thuraissigiam stands for the limited principle that those "at the threshold of initial entry" stand on a different footing for due process purposes than noncitizens "who have established connections in this country." 591 U.S. at 107.

Petitioner is not seeking "initial entry" into the United States.  He has lived in the United States on parole since January 2024 and is in the midst of removal proceedings.  As such, he has full due process rights. See Rincon v. Hyde, No. 25-CV-12633-BEM, 2025 WL 3122784, at *6-7 (D. Mass. Nov. 7, 2025) (noncitizen paroled under 8 U.S.C. § 1182(d)(5) has due process rights); Alves De Souza v. Moniz, No. 25-CV-13334-MJJ, Doc. No. 12 at 5 (D. Mass. Dec. 1, 2025) (same); Tenemasa-Lema v. Hyde, No. 25-CV-13029-BEM, 2025 WL 3280555, at *4 (D. Mass. Nov. 25, 2025) (same); Destino v. FCI Berlin, No. 1:25-CV-374-SE-AJ, 2025 WL 4010424, at *7 (D.N.H. Dec. 24, 2025) (same); Rodriguez-Acurio v. Almodovar, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *26 (E.D.N.Y. Nov. 28, 2025) (same); Aviles-Mena v. Kaiser, No. 25-CV-06783-RFL, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025) (same).  These protections extend to deportation proceedings. Reno v. Flores, 507 U.S. 292, 306 (1993) ("It is well

3

established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.").

To establish whether government conduct in the deportation process violates the Due Process Clause, courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976). See Hernandez-Lara v. Lyons, 10 F.4th 19, 27-28 (1st Cir. 2021) (applying Mathews to a noncitizen's detention). The three factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. This Court will take each factor in turn.

**A. Private Interest**

Freedom from imprisonment is "the most elemental of liberty interests," Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004), and "lies at the heart of the liberty that [the Due Process] Clause protects," Zadvydas, 533 U.S. at 690. For that reason, "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425 (1979).

Petitioner is facing significant deprivation. The government is currently detaining Petitioner at the Plymouth County Correctional Facility. The government is in control of Petitioner's daily activities and is keeping him from his family, community, and daily activities. Accordingly, the first factor strongly favors Petitioner. See Hernandez-Lara, 10 F.4th at 30 (finding the first factor "weighs heavily" in a noncitizen detainee's favor).

### B.    Risk of Erroneous Deprivation

The second factor focuses on the risk of erroneous deprivation of Petitioner's liberty interest, and the degree to which alternative procedures may ameliorate that risk. See Mathews, 424 U.S. at 335.  Due process protects against immigration detention where detention does not bear a "reasonable relation to the purpose for which the individual [was] committed." Zadvydas, 533 U.S. at 690-91 (quoting Jackson v. Indiana, 406 U.S. 715, 738 (1972)).  Here, Petitioner's release on humanitarian parole necessarily required a finding that he posed neither "a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).  There is no evidence in the record that the government reconsidered its prior determination that Petitioner poses no safety or flight risk.

The risk of erroneous deprivation is particularly high when, as is undisputed here, Petitioner received no meaningful procedural safeguards. See Rincon, 2025 WL 3122784, at *9; Destino, 2025 WL 4010424, at *13 ("[T]he risk of erroneous deprivation of [the petitioner's] liberty interest is significant because he has been denied any opportunity to be heard regarding his confinement."); Sorosh v. Wofford, No. 1:26-CV-00409 DAD SCR, 2026 WL 323058, at *4 (E.D. Cal. Feb. 6, 2026) ("The risk of erroneous deprivation is particularly high when, as is undisputed here, petitioner received no meaningful procedural safeguards.").  Respondents argue that Petitioner's detention is at the government's discretion.  Such absolute discretion, without notice or reason, poses an undue risk of unnecessary and unlawful deprivation.  As a bond hearing provides minimal administrative burdens while protecting Petitioner's due process rights, it is an adequate substitute procedure to protect Petitioner's rights. Destino, 2025 WL 4010424, at *14.

Petitioner's humanitarian parole was revoked without any notice or opportunity to be heard.  Petitioner has not violated the conditions of his parole and there is no evidence in the

record that he is either a flight risk or a danger to the community.  Under such circumstances, the second factor "weighs heavily" in favor of relief. See Hernandez-Lara, 10 F.4th at 30.

### C.    Government Interest

As to the third factor, Respondents have not argued that the government has any interest in Petitioner's continued detention.  Although bond hearings necessitate some administrative burden, the cost of providing a bond hearing is minimal. Rincon, 2025 WL 3122784, at *9; Tenemasa-Lema, 2025 WL 3280555, at *10.  Further, the government's interest in detention is low where, as here, there is no evidence that Petitioner is a flight risk or a danger to the community. Tenemasa-Lema, 2025 WL 3280555, at *10-11.  Simply put, the government has very little interest in avoiding any opportunity for Petitioner to challenge his detention.

In sum, the Mathews factors weigh definitively in favor of relief, that Petitioner's detention without a bond hearing violates his due process rights, and that a bond hearing is an appropriate and minimally invasive additional procedure to ensure that right.

### IV.    CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus [Dkt. 1] is **GRANTED**.  Respondents are **ORDERED** to provide Petitioner with a bond hearing.  Respondents are **ENJOINED** from denying Petitioner bond on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(1).  If the bond hearing is not held within 7 days, Petitioner is ordered released.  The parties shall submit a status report within 10 days of this order.

**SO ORDERED.**

Dated: April 2, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge

6